**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | No. 23-3757 |
| *Plaintiff - Appellee*, | D.C. No. 2:20-cv-00047-DWL |
| v. | |
| SUCCESS BY MEDIA HOLDINGS INC., a corporation doing business as Success By Health, doing business as Success By Media, SUCCESS BY MEDIA, LLC, a limited liability company doing business as Success By Health, doing business as Success By Media, ENHANCED CAPITAL, CAROL MAGDA, TRAVELNU INTERNATIONAL INC., RINPARK SA, NETFORCE SEMINARS, RICHARD SLABACK, DARIN EPPS, EDWARD LAMONT, EVAN R MENDELSON, JONATHAN WESLEY WARE, SEENA GREESIN, KIMBERLY FRIDAY, | OPINION |
| *Defendants*, | |
| LINA NOLAND, individually and as an officer of Success by Media Holdings Inc. and Success By Media | |

2          FEDERAL TRADE COMMISSION V. NOLAND

LLC; JAMES D NOLAND, Jr.,
individually and as an officer of
Success by Media Holdings Inc. and
Success by Media LLC; SCOTT A
HARRIS, individually and as an
officer of Success By Media LLC;
THOMAS G SACCA,

> *Defendant-ctr-claimants -*
> *Appellants*.

Appeal from the United States District Court
for the District of Arizona
Dominic Lanza, District Judge, Presiding

Argued and Submitted March 27, 2025
Phoenix, Arizona

Filed November 24, 2025

Before: Susan P. Graber and Mark J. Bennett, Circuit
Judges, and Joan H. Lefkow, District Judge.[*]

Opinion by Judge Lefkow

---

[*] The Honorable Joan H. Lefkow, United States District Judge for the
Northern District of Illinois, sitting by designation.

## SUMMARY[**]

### Federal Trade Commission

In an action brought by the Federal Trade Commission ("FTC") alleging that Individual Appellants—James Noland, Lina Noland, Thomas Sacca, and Scott Harris— were in violation of the Federal Trade Commission Act and various consumer protection rules, the panel rejected Individual Appellants' challenges to certain aspects of the relief the district court granted.

Individual Appellants operated a pair of multi-level marketing businesses called Success by Health and VOZ Travel. On appeal, Individual Appellants did not dispute the district court's determinations of liability. Instead, they challenged only certain aspects of the relief the district court granted: (1) the asset freeze and receivership imposed by the district court's preliminary injunction; (2) the $7,306,873.14 civil compensatory sanction on James Noland, Harris, and Sacca for violating a 2002 permanent injunction that barred James Noland and those acting in concert with him from ever operating unlawful multi-level marketing schemes; (3) the $6,829 in money damages for Merchandise Rule violations; and (4) the imposition of a permanent injunction barring Individual Appellants from participating in multi-level marketing in the future.

First, the panel held that Individual Appellants' challenge to the preliminary injunction was moot.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

4          FEDERAL TRADE COMMISSION V. NOLAND

Second, the panel held that the district court did not abuse its discretion by awarding a civil compensatory sanction that reflects the net revenues of SBH and VOZ Travel.

Third, the panel held that the district court did not abuse its discretion in granting monetary relief under § 19 of the Federal Trade Commission Act. The FTC was not required to conduct administrative proceedings and issue a final cease-and-desist order before initiating this action in federal court.

Finally, the panel rejected Individual Appellants' argument that the district court erred by prohibiting them from engaging in any future multi-level marketing programs. The district court's injunction was not overly broad, and the district court reasonably concluded that prohibiting Individual Appellants from participating in multi-level marketing programs was necessary.

## COUNSEL

Matthew B. Weprin (argued), Jesselyn Friley, Matthew M. Hoffman, Evan D. Mendelson, Jonathan W. Ware, and Mariel Goetz, Attorneys; Anisha S. Dasgupta, General Counsel; Federal Trade Commission, Washington, D.C.; for Plaintiff-Appellee.

David L. Abney (argued), Ahwatukee Legal Office PC, Phoenix, Arizona, for Defendants-counter-claimant-Appellants.

# OPINION

LEFKOW, District Judge:

By late 2019, James Noland, Lina Noland, Thomas Sacca, and Scott Harris (collectively, "Individual Appellants") were operating a pair of multi-level marketing businesses called Success by Health and VOZ Travel. The Federal Trade Commission ("FTC") filed a lawsuit in federal district court alleging that Individual Appellants were in violation of the Federal Trade Commission Act (the "FTC Act") and various consumer protection rules. This was not the first time that the FTC had scrutinized James Noland. At the time the case was filed, he was subject to a permanent injunction entered in 2002 that barred him and those acting in concert with him from ever operating unlawful multi-level marketing schemes. Consequently, the FTC moved to hold James Noland, Harris, and Sacca in contempt of the 2002 permanent injunction.

In the Lead Action,[1] the district court swiftly granted the FTC's motions for an *ex parte* temporary restraining order and for a preliminary injunction. Through those preliminary orders, the district court froze Individual Appellants' assets and imposed a receivership to assume control over Success

---

[1] The FTC filed a first action in January 2020, seeking a permanent injunction and other equitable relief in case number 20-cv-00047 (the "Lead Action"). The FTC separately filed a Motion for an Order to Show Cause and Motion for Contempt Sanctions in case number 00-cv-02260 (the "Contempt Action"). As discussed in text below, in July 2022, the district court consolidated both into the Lead Action, and that consolidated action is now before us on appeal.

6          FEDERAL TRADE COMMISSION V. NOLAND

by Health, VOZ Travel, and related entities.[2] Ultimately, the district court resolved certain of the FTC's claims in favor of the Commission at summary judgment and issued a final judgment after an 11-day bench trial. The district court found Individual Appellants liable for operating a pyramid scheme in violation of § 5 of the FTC Act, 15 U.S.C. § 45(a), and for violating two consumer protection rules promulgated under the FTC Act. The court awarded monetary damages to compensate consumers for Individual Appellants' rules violations, permanently enjoined Individual Appellants from being involved with multi-level marketing schemes in the future, and imposed a compensatory civil sanction on the Individual Appellants it found to be in contempt of the 2002 permanent injunction.

On appeal, Individual Appellants do not dispute the district court's determinations of liability. Instead, they challenge only certain aspects of the relief. We have jurisdiction pursuant to 28 U.S.C. § 1291. We AFFIRM in all respects.

## BACKGROUND

Individual Appellants began a multi-level marketing company called Success by Health ("SBH") in 2017. The company sold coffee, tea, and nutraceutical products. SBH recruited "affiliates" who would purchase the company's products to sell to end-consumers through person-to-person sales. Individual Appellants promised that the company would offer "financial freedom" so long as affiliates followed James Noland's training programs, which were

---

[2] During the pendency of the litigation, Individual Appellants filed an interlocutory appeal to this court. Appellants voluntarily dismissed their appeal of the district court's denial of a Motion to Dissolve or Modify the Preliminary Injunction in case number 20-17324.

also available for purchase. Individual Appellants designed the compensation and bonus structure to incentivize affiliate recruitment over product sales. The district court found that SBH generated approximately $6,111,976.13 in net revenues from product sales and event tickets.

Around 2019, business at SBH slowed. To generate income to offset SBH's losses, Individual Appellants started a second business, VOZ Travel, in October 2019. Individual Appellants purported to sell travel services that ranged between $1,000 and $2,795 on an internet-based travel platform. This platform was never completed, however, and the company never created any of the promised products. What Individual Appellants did do, as the district court recounted, was market VOZ Travel as a "profitable path towards financial independence" and incentivize individuals who signed up for the platform to recruit others. The district court found that, even though James Noland "recogniz[ed] his inability to actually provide a travel product, [he] added that VOZ Travel is more than 'a discount on your travel'— it is 'freedom,' 'experiences,' and 'memories.'" Over the course of its operation, VOZ Travel's net revenues amounted to $1,194,897.01.

In time, the FTC sued Individual Appellants and the pair of corporate entities in the district court. The FTC alleged that Individual Appellants, through their operation of SBH and VOZ Travel, violated § 5(a) of the FTC Act, which prohibits the use of "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). It further alleged that Individual Appellants violated two consumer protection rules promulgated under the FTC Act: first, the FTC alleged that Individual Appellants violated the Mail, Internet, or Telephone Order Merchandise Rule (the

"Merchandise Rule"), 16 C.F.R. § 435.2, which requires sellers that are unable to ship goods on a timely basis either to contact the buyers and permit them to consent to delayed shipping or provide the buyers a refund, *id.* Second, the FTC alleged that Individual Appellants violated the Rule Concerning Cooling-Off Period for Sales Made at Homes or at Certain Other Locations (the "Cooling-Off Rule"), *id.* § 429.1, which requires door-to-door sellers to give buyers three days to cancel a transaction and provide notice of that right, *id.*

The FTC also sought prospective injunctive relief under § 13(b) of the FTC Act, 15 U.S.C. § 53(b), to "halt and redress violations" of the FTC Act and asserted that the court could "award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies[.]" The FTC separately relied on authority granted under § 19, 15 U.S.C. § 57b, to remedy violations of the Merchandise Rule and Cooling-Off Rule. Under that section, district courts are authorized to grant such relief as they find necessary to redress consumer injury resulting from any such rule violation, including, but not limited to, the refund of money. *Id.* § 57b(b).

After the FTC filed the instant lawsuit, it also moved to hold James Noland, Harris, and Sacca in contempt of a 2002 injunction that arose from an earlier lawsuit that the FTC had filed against James Noland for promoting a separate multi-level marketing program called Bigsmart. The contempt action was consolidated with the FTC's lead action in this case. James Noland had reached a settlement with the FTC to resolve that earlier lawsuit, pursuant to which the district court entered the permanent injunction prohibiting James Noland and others "in active concert or participation" with

him from "(1) operating a 'prohibited marketing scheme,' including a pyramid scheme; (2) making any 'false or misleading statement . . . of material fact' in connection with [a multi-level marketing program]; and (3) failing to take 'reasonable steps' to monitor compliance with the permanent injunction."

Among the numerous rulings the district court made in the consolidated cases before entering a final judgment, several are pertinent to the issues on appeal.

*Ex Parte Temporary Restraining Order.* On January 17, 2020, the district court issued an *ex parte* temporary restraining order under seal, in which it found good cause to believe that Individual Appellants, among other things, operated an illegal pyramid scheme and "falsely represent[ed] that members of the [SBH] program (called 'Affiliates') are likely to earn substantial income" in violation of § 5(a) of the FTC Act and also violated the Merchandise Rule and Cooling-Off Rule. The court further found that immediate and irreparable damage would result from their ongoing statutory and rule violations. Asserting its authority under § 13(b) of the FTC Act, the district court put in place a receivership to assume control over Individual Appellants' assets and businesses and froze Individual Appellants' assets.[3]

*Preliminary Injunction.* About a month later, on February 28, 2020, after reviewing briefing from both parties and holding an evidentiary hearing, the district court entered a preliminary injunction, through which it maintained an asset freeze and receivership over SBH.

---

[3] The initial receiver was replaced after July 2021. We refer to both collectively as "Receiver."

The court found "compelling evidence that [d]efendants are operating a pyramid scheme and that they have otherwise engaged in deceptive practices in violation of 15 U.S.C. § 45." As a consequence, it concluded that "extensive injunctive relief is necessary to protect consumers from further harm." On appeal, Individual Appellants do not challenge the imposition of the preliminary injunction, only its scope.

*Summary Judgment.* The district court granted partial summary judgment to the FTC, holding that there was no genuine dispute of fact that VOZ Travel was a pyramid scheme, that Individual Appellants promoted VOZ Travel using false claims, and that Individual Appellants violated the Merchandise and Cooling-Off Rules. The court denied summary judgment in favor of the FTC with respect to Success by Health.

*Bench Trial.* In May 2023, the district court held an 11-day bench trial to resolve the remaining claims. The court issued its findings of fact and conclusions of law in a lengthy and thorough order. The district court concluded that SBH operated as a pyramid scheme and that Individual Appellants had made material misrepresentations to affiliates concerning the likelihood of affiliates' earning substantial income through SBH and VOZ Travel. Finally, the court held James Noland, Harris, and Sacca in contempt of the 2002 permanent injunction through their operation of SBH and VOZ Travel.

Individual Appellants do not dispute any of the district court's findings of liability. Instead, they challenge various aspects of the relief the district court granted: the asset freeze and receivership imposed by the preliminary injunction; the

$7,306,873.14 civil compensatory sanction on James Noland, Harris, and Sacca for violating the 2002 permanent injunction; the $6,829 in money damages for Merchandise Rule violations; and the imposition of a permanent injunction barring Individual Appellants from participating in multi-level marketing in the future.

## STANDARD OF REVIEW

"We review the district court's legal conclusions de novo, the factual findings underlying its decision for clear error, and the injunction's scope for abuse of discretion." *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 969 (9th Cir. 2015) (citation omitted). We review for abuse of discretion the district court's decision to appoint a receiver, *Can. Life Assurance Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009), and the propriety of its supervision of the receivership, *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999), *as amended* (Mar. 23, 2000).

The district court was thorough in its analysis at every stage of the litigation. We discuss each of the claims on appeal and, after our own review of the record, have no basis to disagree with the district court.

## DISCUSSION

### I. Preliminary Injunction

Individual Appellants assert that the district court's imposition of a pre-judgment receivership and asset freeze as part of its preliminary injunction was improper. But the district court ultimately issued a permanent injunction. And, where "a permanent injunction has been granted that supersedes the original preliminary injunction, the interlocutory injunction becomes merged in the final decree

12          FEDERAL TRADE COMMISSION V. NOLAND

and [an] appeal from the interlocutory preliminary order is properly dismissed." *In re Est. of Ferdinand Marcos H.R. Litig.*, 94 F.3d 539, 544 (9th Cir. 1996) (citation omitted). The permanent injunction addresses neither the receivership nor the asset freeze, so whether those aspects of the preliminary injunction were proper is moot.

## II. Civil Compensatory Sanction

We turn to the district court's civil compensatory sanction against James Noland, Harris, and Sacca for being in contempt of the 2002 permanent injunction.[4] Individual Appellants argue that the district court abused its discretion when it ordered a civil compensatory sanction in the amount of $7,306.873.14, which they characterize as a "massive compensatory sanction that never identified the sustained losses or purported to redress any wronged party for any sustained losses."

The Supreme Court has stated that "[j]udicial sanctions in civil contempt proceedings may, in a proper case, be employed . . . to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947). The purpose of civil sanctions is to "coerce" compliance with a court order or to

---

[4] Two circuits have ruled that the Supreme Court's ruling in *AMG Capital Management, LLC v. Federal Trade Commission*, 593 U.S. 67 (2021), does not preclude district courts from ordering monetary relief as a sanction for contempt of court. *See, e.g.*, *FTC v. Pukke*, 53 F.4th 80, 102–03 (4th Cir. 2022); *FTC v. Nat'l Urological Grp., Inc.*, 80 F.4th 1236, 1244 (11th Cir. 2023) ("[T]he Court said nothing about how courts could *enforce* injunctions imposed under § 13(b). Neither the text of the Act nor the Supreme Court's decision in *AMG* expressly limits a district court's contempt powers in this context."). Individual Appellants do not challenge the district court's authority to issue the sanction, but only the court's manner of exercising that authority.

"compensate" the aggrieved party for sustained losses. *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (quoting *United Mine Workers*, 330 U.S. at 303–04). "[D]istrict courts have broad discretion to use consumer loss to calculate sanctions for civil contempt of an FTC consent order" so long as they can "explain why the use of consumer loss is appropriate and why the remedy is commensurate with the harm." *FTC v. EDebitPay, LLC*, 695 F.3d 938, 945 (9th Cir. 2012). The district court has done so in this case.

The district court sufficiently explained that consumer loss is appropriate because Individual Appellants' "pattern or practice of contumacious conduct" of repeatedly operating unlawful pyramid schemes "was pervasive and went to the heart of consumers' purchasing decisions." *See, e.g.*, *FTC v. BlueHippo Funding, LLC*, 762 F.3d 238, 245 (2nd Cir. 2014); *FTC v. Kuykendall*, 371 F.3d 745, 764 (10th Cir. 2004) ("When . . . the FTC has shown through clear and convincing evidence that defendants were engaged in a pattern or practice of contemptuous conduct, the district court may use the defendants' gross receipts as a starting point for assessing sanctions."). Accordingly, the district court determined that the combined net revenues of SBH and VOZ Travel, less any commissions Individual Appellants paid to the companies' affiliates—precisely $7,306,873.14—was an accurate measure of consumer loss. From there, it was Individual Appellants' burden to prove any offsets from that baseline. *See, e.g.*, *BlueHippo*, 762 F.3d at 245 ("After the court uses the defendants' gross receipts as a baseline for calculating damages, the court must permit the defendants to 'put forth evidence showing that certain amounts should offset the sanctions assessed against them.'"

14          FEDERAL TRADE COMMISSION V. NOLAND

(citation omitted)). Individual Appellants failed to do so here.

Individual Appellants raise several concerns with the district court's approach. First, they argue that the FTC failed to establish this amount by the preponderance of the evidence, as is its burden, because it provided no proof of losses suffered by the FTC or any consumers as a result of the contemptuous conduct. *Kuykendall*, 371 F.3d at 754. As explained above, however, a calculation of damages for consumer loss may begin with the defendants' gross receipts derived from the contemptuous conduct. The FTC presented evidence of net revenues arising from VOZ Travel sales and net revenues arising from SBH product sales and event tickets (the contemptuous conduct), which totaled $1,194,897.01 and $6,111,976.13, respectively. The district court considered the parties' competing "alternative profit and revenue calculations" before "conclud[ing] that the competing figures offered by the FTC are accurate." That ruling was not abuse of discretion, as the district court fashioned the sanction to "track" the "compensatory purpose" of civil sanctions. *Oracle USA, Inc. v. Rimini St., Inc.*, 81 F.4th 843, 858 (9th Cir. 2023).

Next, Individual Appellants contend that the civil compensatory sanction based on the net revenues is not tied to any "losses resulting from any wrongs and was not calibrated to any actual losses," such that the sanction is punitive rather than compensatory and would provide a windfall to the FTC. But Individual Appellants' concerns should be allayed because the district court specified: "Upon full satisfaction of the Judgment, if there is any money left over after administering and paying consumer redress, the FTC will either return that money to [Individual Appellants] or ask the Court for permission to use the funds for some

other purpose." For these reasons, the district court did not abuse its discretion by awarding a civil compensatory sanction that reflects the net revenues of SBH and VOZ Travel.

## III.  Monetary Damages Under Section 19

Next, Individual Appellants argue that the district court lacked the authority to grant monetary relief of $6,829 for rule violations pursuant to § 19. First, they contend that the FTC violated its own rules by not conducting administrative proceedings and issuing a final cease-and-desist order before initiating this action in federal court.[5] This assertion is incorrect. There are two parts to § 19(a), only one of which requires the FTC to issue a final cease-and-desist order before filing suit in federal court. Under § 19(a)(1)—the section under which this action was brought—the FTC "may commence a civil action" in federal district court for violations of "any rule" promulgated under the FTC Act that relates to unfair or deceptive acts or practices, other than an "interpretive rule." 15 U.S.C. § 57b(a)(1). Section 19(a)(2), on the other hand, applies to statutory violations of the FTC Act. For actions brought under that subsection, the FTC is required to first commence administrative proceedings and issue "a final cease and desist order" before proceeding to federal court. 15 U.S.C. § 57b(a)(2). Here, the FTC's claims were for violations of the Merchandise Rule and Cooling Off Rule—both of which are rules promulgated under the FTC

---

[5] As a threshold issue, the Supreme Court's decision in *AMG Capital* did not preclude the FTC from seeking monetary relief under § 19. *See AMG Capital*, 593 U.S. at 82 ("Nothing we say today, however, prohibits the Commission from using its authority under § 5 and § 19 to obtain restitution on behalf of consumers.").

Act and therefore fall under § 19(a)(1), which does not call for an administrative proceeding.

Individual Appellants argue that in *AMG Capital*, the Supreme Court held that § 19 permits monetary relief only when the FTC has engaged in administrative proceedings. *See AMG Capital*, 593 U.S. at 77. But the Court's reference to § 19 was general and did not distinguish between the two subsections. *Id*. And when distinguishing between the scope of relief available under § 13(b) and § 19, the Court directly cited only § 19(a)(2). *Id*.

While this court has yet to address this issue, at least one other circuit court and at least several district courts have recognized that *AMG Capital* does not in any way preclude the FTC from commencing actions under § 19(a)(1) directly in federal district courts. *See, e.g.*, *FTC v. Simple Health Plans LLC*, 58 F.4th 1322, 1328 n.4 (11th Cir. 2023) (noting that while "[c]ertain additional limitations apply when the Commission is seeking relief after obtaining a final cease and desist order," there is no such requirement for claims brought under § 19(a)(1)); *FTC v. QYK Brands LLC*, No. SACV-20-1431 PSG, 2021 WL 5707477, at *4 (C.D. Cal. Nov. 30, 2021) ("[T]he FTC is authorized to seek monetary relief for violation of [the Merchandise Rule] under § 19(a)(1) of the FTCA without first commencing administrative proceedings or issuing a cease and desist order."), *aff'd in part, rev'd on other grounds*, No. 22-55446, 2024 WL 1526741 (9th Cir. Apr. 9, 2024), *cert. denied*, 145 S. Ct. 1170 (2025). We agree with this reading of *AMG Capital* and the pertinent rules. It was not necessary for the FTC to conduct administrative proceedings and issue a final cease-and-desist order before initiating this action in federal court.

Next, Individual Appellants argue that the district court erred by awarding monetary damages in conjunction with rule violations under § 19. Individual Appellants assert that the FTC did not have a viable § 19 claim, because the "FTC apparently never had any proof that there was any significant damage to anyone caused by the alleged violations of the Merchandise Rule and Cooling-Off Rule." Whether the damage is "significant" is not the standard by which monetary damages are assessed or awarded. The district court found that there were five distinct Merchandise Rule violations where "a consumer requested a refund after experiencing a shipping delay, [and] SBH . . . reject[ed] the refund request." In its conclusions of law, the district court noted explicitly that "Defendants make no effort to specifically address or dispute the FTC's claim for damages based on these five episodes." For these five violations, the district court ordered monetary relief in the form of consumer refunds in the amount of $6,829.

Finally, Individual Appellants argue that the monetary relief granted is "solely for the FTC's benefit." Their reading is contrary to the plain text of the district court's final order. The district court explained that the monetary relief granted for Merchandise Rule violations "shall not be used for purposes other than consumer redress." Moreover, the district court took care to ensure this award of monetary relief would not result in a double recovery for any consumer compensated pursuant to the compensatory sanction granted by the court. For all these reasons, the district court did not abuse its discretion in granting monetary relief under § 19.

18          FEDERAL TRADE COMMISSION V. NOLAND

## IV.   Prohibition on Multi-Level Marketing Programs

Finally, Individual Appellants argue that the district court erred by prohibiting them from engaging in any future multi-level marketing programs. We disagree.

When reviewing the breadth of a district court's injunction, we consider "(1) the seriousness and deliberateness of the violation; (2) [the] ease with which the violative claim may be transferred to other products; and (3) whether the [defendant] has a history of prior violations." *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014) (first alteration in original) (citation omitted). Injunctions are upheld "so long as [they] bear[] a reasonable relation to the unlawful practices found to exist." *Id*. (citation and internal quotation marks omitted).

The district court's injunction is not overly broad. "[I]njunctive relief under the FTC Act may be framed 'broadly enough to prevent respondents from engaging in similarly illegal practices in future advertisements.'" *Id.* at 1105 (quoting *FTC v. Colgate–Palmolive Co.,* 380 U.S. 374, 395 (1965)); *see id.* at 1101 (affirming a permanent injunction that barred defendant from "engaging in negative-option marketing, continuity programs, preauthorized electronic fund transfers, the use of testimonials, and marketing or selling products related to grants, credit, business opportunities, diet supplements, or nutraceuticals . . . ."); *see also FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 536 (S.D.N.Y. 2000) ("[B]road injunctive relief against [defendant], including a prohibition on all multi-level marketing is appropriate. After participating in numerous multi-level marketing schemes, [defendant] developed, owned and operated his own multi-level marketing scheme that was deceptive to its core. . . .

Moreover, throughout the pendency of this litigation, [he] has ignored this Court's orders.").

Contrary to Individual Appellants' implicit characterization otherwise, the district court recognized that "it is no small thing to impose a lifetime ban on an individual's ability to earn a livelihood in a particular industry." [6] Nevertheless, the court quite reasonably concluded that prohibiting Individual Appellants from participating in multi-level marketing programs was necessary. The unlawful operation of SBH and VOZ Travel shows that another court order was needed to hold them accountable. Individual Appellants are not wrong that "[n]ot all [multi-level marketing] businesses are illegal pyramid schemes." *FTC v. BurnLounge, Inc.*, 753 F.3d 878, 883 (9th Cir. 2014). But given their own past conduct and James Noland's public admission that he could "plug any company or product into [his] process," Individual Appellants have not shown that they are capable of operating *lawful* multi-level marketing programs. As the district court stated, "The sheer volume of deceptive tactics and statements associated with [their] businesses provides unmistakable evidence of scienter and shows that the violations were not isolated, but recurrent."

The Supreme Court has indeed recognized that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property'

---

[6] In recognition of the seriousness of a permanent injunction on the ability for one to earn a living, the district court chose to not bar Individual Appellants from "participating in the sale of business coaching services," even though these services were integral to the operation of their pyramid schemes.

concepts of the Fifth Amendment . . . ." *Greene v. McElroy*, 360 U.S. 474, 492 (1959) (internal citations omitted). But when individuals have shown time and time again that they are incapable of working in their chosen profession legally, a court's intervention is warranted. *See FTC v. Nat'l Lead Co.*, 352 U.S. 419, 431 (1957) ("[T]hose caught violating the [FTC] Act must expect some fencing in."); *FTC v. Gill*, 265 F.3d 944, 957 (9th Cir. 2001) ("[G]iving Defendants another chance might prove to be unwise."). Accordingly, we find no basis to disturb the district court's permanent injunction barring Individual Appellants from participating in multi-level marketing programs.

**AFFIRMED.**